**Ian DODDS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–7086.**

Court of Appeals of Alaska.

March 10, 2000.

---

**11.** *Alvarado,* 486 P.2d at 905.

**12.** 599 P.2d at 149–50.

**13.** *Erick,* 642 P.2d at 826.

Marcia E. Holland, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Marcelle K. McDannel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Ian Dodds appeals his conviction for first-degree robbery.[1] He contends that the trial judge committed error by failing to have the jury decide whether the State had proved the *corpus delicti* of robbery. But Dodds did not ask for a *corpus delicti* instruction, so he must establish plain error to prevail on appeal. As we explain here, the facts of Dodds's case raise no real issue of *corpus delicti*. Moreover, Alaska law provides no clear answer to the question of whether *corpus delicti* is to be decided by the trial judge or the jury. For these reasons, we conclude that the trial judge's failure to instruct the jury on the issue of *corpus delicti* does not constitute plain error, and we therefore affirm Dodds's conviction.

*Facts of the case and the challenged jury instruction*

On the night of September 6, 1997, two men broke into a Fairbanks residence and robbed the homeowners. One week later, the police questioned Ian Dodds about this crime, and Dodds confessed that he was one of the robbers.

At Dodds's ensuing trial for first-degree robbery, the State introduced evidence of Dodds's confession. Accordingly, Dodds's attorney asked the trial judge to give Criminal Pattern Jury Instruction 1.24, which discusses whether a defendant's out-of-court statement should be categorized as an admission or a confession:

A statement made by a defendant other than at the defendant's trial may be either an admission or a confession.

An admission is a statement by a defendant which by itself is not sufficient to warrant an inference of guilt but which tends to prove guilt when considered with other evidence.

A confession is a statement by a defendant which discloses intentional participation in the criminal act for which the defendant is on trial and which, if believed, proves the defendant's guilt of that crime.

You are the exclusive judges as to whether an admission or a confession was made by the defendant and if the statement is true in whole or in part. If you should find that such statement is entirely untrue, you must reject it. If you find that it is true in part, you may consider that part which you find to be true.

Evidence of an oral admission of the defendant ought to be viewed with caution.

Even though Dodds asked for this instruction, he now claims that the trial judge committed plain error in giving it. The error in the instruction, Dodds contends, is the way it describes a defendant's confession.

According to the instruction, a confession is "a statement by a defendant which discloses [the defendant's] intentional participation in the [crime charged] *and which, if believed, proves the defendant's guilt of that crime.*" (emphasis added) Dodds argues that this italicized language misstates the doctrine of *corpus delicti* because it suggests that a defendant's confession, standing alone, may be sufficient to prove a defendant's guilt.

*The proof required by the corpus delicti rule*

Dodds insists that, even without request, the trial judge was obliged to instruct the jury that Dodds's confession was not sufficient to prove his guilt unless the State presented substantial independent evidence corroborating the confession. In particular, Dodds argues that the trial judge committed plain error when he neglected to tell the jury that they could not convict Dodds unless the State presented substantial independent evidence tending to establish that Dodds was, in fact, one of the robbers.

Under the doctrine of *corpus delicti*, a criminal conviction can not rest on an uncorroborated confession.[2] But Dodds's argument misapprehends the *corpus delicti* rule. While *corpus delicti* requires independent evidence that the charged crime oc-

---

**1.** AS 11.41.500(a).

**2.** *See Castillo v. State,* 614 P.2d 756, 758 (Alaska 1980); *Armstrong v. State,* 502 P.2d 440, 447 (Alaska 1972).

curred, it does not require independent evidence that the defendant participated in that crime.

◼ Generally speaking, to prove that a defendant has violated a criminal statute, the government must establish (1) the occurrence of the injury, loss, or other harm specified in the statute, and (2) the defendant's culpable participation in causing this injury, loss, or harm.[3] The *corpus delicti* rule requires the State to introduce independent evidence of the first factor, but not the second.[4] The Alaska Supreme Court has explicitly adopted this interpretation of the rule.[5]

In Dodds's case, the first factor—the occurrence of the robbery—was amply demonstrated by the testimony of the two victims and was not seriously contested. The primary dispute at trial involved the second factor—whether Dodds participated in the robbery. This dispute raised no issue of *corpus delicti.*

◼ To qualify as "plain error", an error must be obviously prejudicial to the fairness of the proceedings.[6] Because Dodds did not

dispute the occurrence of the robbery, there was no dispute concerning the existence of the *corpus delicti.* Therefore, even if it was error to fail to instruct the jury on this issue, the error was not manifestly prejudicial to the fairness of Dodds's trial.[7]

*Whether corpus delicti is an issue for the trial judge or the jury*

◼ The *corpus delicti* rule is universally interpreted as requiring the government to lay an evidentiary foundation (by producing corroborating evidence) as a predicate for introducing the defendant's confession. In its traditional form, the rule may have barred the government from introducing the confession until it first had proved the *corpus delicti.*[8] Nowadays, courts and commentators generally take the position that a trial judge has the discretion to vary the order of proof—allowing the government to introduce the defendant's confession before it has introduced the additional evidence that will establish the *corpus delicti,* so long as the *corpus delicti* is proved before the government rests.[9] This is the position adopted by the

---

3. *See* Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* (3rd ed.1982), pp. 143–44; Wayne R. LaFave and Austin W. Scott, Jr., *Substantive Criminal Law* (1986), § 1.4(b), Vol. 1, pp. 24–25.

   Often, for analytical purposes, the first factor (the occurrence of harm) is split into two components. Under this analysis, the government must prove (1A) that the specified harm occurred, and (1B) that this harm occurred through criminal agency (as opposed to accident or natural causes). *See* Perkins & Boyce, *id.;* LaFave & Scott, *id..*

4. *See* Perkins & Boyce, *id.;* LaFave & Scott, *id.;* John H. Wigmore, *Evidence at Trials at Common Law* (Chadbourn rev'n, 1978), § 2072, Vol. VII, pp. 524–28. *And see State v. Lung,* 70 Wash.2d 365, 423 P.2d 72, 76 (1967) ("The *corpus delicti* in a homicide case ... does not require proof of a causal relation between the death and the accused."); *People v. Ott,* 84 Cal.App.3d 118, 148 Cal.Rptr. 479, 487 (1978) ("[T]he identity of the perpetrator is not a part of the *corpus delicti* ....").

5. *See Castillo v. State,* 614 P.2d 756, 759–760 (Alaska 1980) ("[O]ur *corpus delicti* doctrine does not require proof that the criminal activity was that of the defendant.... To require proof that the defendant was the [culprit] as an essential element of the *corpus delicti* [would be] absurd."); *see also Winters v. State,* 646 P.2d 867,

872 (Alaska App.1982) (citing and following *Castillo* ).

6. *See Potts v. State,* 712 P.2d 385, 390 (Alaska App.1985) ("A plain error is one that is (1) so obvious that it must have been apparent to a competent judge and a competent lawyer even without an objection and (2) so substantially prejudicial that failing to correct it on appeal would perpetuate a miscarriage of justice."); *see also Adams v. State,* 927 P.2d 751, 756 (Alaska App.1996) (plain error is "[an] impropriety ... so flagrant as to undermine the fundamental fairness of the trial.") (quotation omitted).

7. *See United States v. Kerley,* 838 F.2d 932, 940 (7th Cir.1988) (failure to instruct the jury on *corpus delicti* was not plain error when the defendant did not dispute the occurrence of the crime).

8. *See Pon Wing Quong v. United States,* 111 F.2d 751, 756 (9th Cir.1940) ("It is, of course, settled that the confession cannot be admitted until the *corpus delicti* has been established.").

9. *Wigmore, supra,* n. 4 § 2703, Vol. VII, pp. 529–530 ("That the evidence of the corpus delicti should be put in *before* a confession is certainly good practice, and is occasionally said to be the rule; but the better view is that the trial judge may determine the order of this evidence....").

Alaska Supreme Court.[10]

But, leaving aside the order of proof, another question remains: Is *corpus delicti* purely a rule specifying the evidentiary foundation that must be laid for admission of the defendant's confession at a criminal trial? Or is *corpus delicti* an implicit element of the government's proof of a criminal charge?

If the *corpus delicti* rule simply defines the evidentiary foundation needed to support introduction of the defendant's confession, then this decision would be made by the trial judge before the case is submitted to the jury. The judge would assess the sufficiency of the State's evidence to prove the *corpus delicti*, and this decision would be one of law—similar to the judge's assessment of the sufficiency of any other evidentiary foundation under Alaska Evidence Rule 104(a)-(b). Assuming the judge ruled that the *corpus delicti* had been established, then, at the end of trial, the jury would consider all of the evidence (including the defendant's confession) and decide whether the State had established each element of the charged crime beyond a reasonable doubt.

If, however, the *corpus delicti* rule establishes an implicit element of the government's proof, then the trial judge's evidentiary ruling would be merely preliminary to the jury's later determination of *corpus delicti*. The defendant's confession would not be admissible unless the trial judge found that the *corpus delicti* had been established. But even after the trial judge ruled that the confession was admissible, the jury would be asked to again determine whether the State's evidence satisfied the *corpus delicti* rule. That is, the jury would be asked to decide whether the State's other evidence was sufficiently corroborative of the confession to establish the occurrence of the crime.

*Wigmore* notes that there is a divergence of legal opinion on this question, with some courts taking the "evidentiary foundation" approach to *corpus delicti* and others taking the "implicit element" approach.[11] According to *Wigmore*, most courts follow the "implicit element" approach, with the jury making the final determination of *corpus delicti*.

The "implicit element" approach to *corpus delicti* is difficult to reconcile with our law's normal view concerning a jury's ability to dispassionately assess a confession. Confessions can be powerful evidence, and courts have traditionally feared that, once a jury hears the defendant's confession, the jury will be unable to put aside this knowledge.

One example of the cautious approach taken by courts when faced with admitting defendants' confessions is the *Bruton* rule—the rule that, when two or more defendants are being tried jointly, if one defendant has confessed and has implicated the co-defendants, that confession can not be admitted unless the confessing defendant takes the stand.[12] The problem is that, unless the confessing defendant takes the stand, their confession is admissible only as the statement of a party opponent.[13] Thus, the confession would be admissible against the defendant who made the confession, but inadmissible against the other defendants. The Supreme Court had previously held that this problem could be solved by instructing the jurors that the confession could be used only to assess the confessing defendant's guilt, not the guilt of the other defendants.[14] But in *Bruton* the Supreme Court reversed course and rejected this solution. The Court concluded that, once the jury heard that one of the defendants had confessed and had implicated one or more co-defendants, the jurors simply could not be trusted to obey an instruction that forbade them from considering that con-

---

10.   *See Armstrong*, 502 P.2d at 447–48 & n. 21 (In a manslaughter prosecution, the trial judge had the discretion to let the government introduce the defendant's confession before the government introduced independent proof that the victim had died by criminal means—although the supreme court suggested that "[i]t would appear to be better practice" to require the government to establish the *corpus delicti* first.).

11.   *Wigmore*, § 2073, Vol. VII, pp. 531–32, n. 4.

12.   *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

13.   See Alaska Evidence Rule 801(d)(2)(A).

14.   *See Delli Paoli v. United States*, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957).

fession when assessing the guilt of the other defendants.[15]

The "implicit element" approach to the *corpus delicti* rule suffers from this same psychological difficulty. Under this approach, if the trial judge rules that *corpus delicti* is satisfied, the jury would hear the defendant's confession, only to later be asked to set the confession to one side and determine whether the government's remaining evidence is sufficient to establish the *corpus delicti*. One might doubt whether jurors, having heard the defendant's confession to a heinous crime, could dispassionately discharge this duty.

But we need not delve farther into the arguable merits or defects of the "implicit elements" approach. Since territorial days, Alaska cases appear to have followed the "evidentiary foundation" approach to the *corpus delicti* rule.

The first Alaska case on this subject ultimately made its way to the United States Supreme Court. In *Perovich v. United States* [16], the defendant appealed his conviction for murder. One of Perovich's claims of error was that his jury had not been instructed on *corpus delicti*. The Supreme Court ruled that no instruction was necessary:

> Error is also alleged in refusing an instruction as to the evidence necessary to establish the *corpus delicti*. It is enough, in answer to this objection, to refer to the summary of the testimony we have already given, and to note the fact that the court instructed that the evidence must be such as to satisfy the jury beyond a reasonable doubt.

*Perovich*, 205 U.S. at 91–92, 27 S.Ct. at 458.

In other words, the Supreme Court viewed the issue of *corpus delicti* as a legal determination to be made by the court. If the government's evidence is sufficient to establish the *corpus delicti*, then the defendant's confession is admissible and the case goes to the jury. At that point, the only question facing the jury is whether the government's evidence, taken as a whole, proves every element of the crime beyond a reasonable doubt.

This view—that the decision regarding *corpus delicti* is to be made by the trial judge, not the jury—was echoed by the Alaska Supreme Court in *Jacinth v. State:*

> In order to justify submitting this case to the jury, therefore, *the trial judge* was required to have found "substantial independent evidence which would tend to establish the trustworthiness" of Jacinth's confession.... [W]e can detect no error in *the superior court's finding* that appellant's confession was sufficiently corroborated to justify presenting the case to a jury.

593 P.2d 263, 266 (Alaska 1979) (emphasis added).

The supreme court's decision in *Castillo v. State* [17] offers another instance where the court treated *corpus delicti* as an issue of law—an issue of evidentiary sufficiency to be decided by the trial judge. The defendant in *Castillo* argued that it was the State's burden to establish *corpus delicti* at grand jury, but the supreme court declined to decide whether the *corpus delicti* rule applied to grand jury proceedings. The court avoided deciding this issue because it concluded that, "even if required, there was sufficient proof of the *corpus delicti* to support the indictment".[18]

The supreme court's decision in *Castillo* is at odds with the "implicit element" approach to *corpus delicti*. If the supreme court had believed that *corpus delicti* posed a jury question, then the court could not have decided the sufficiency of the State's evidence by simply reviewing the grand jury record on its own. Regardless of whether the State's evidence was facially sufficient to establish the *corpus delicti*, the supreme court would have had to invalidate Castillo's indictment because the grand jury was never asked to decide this "element" of the State's proof.

---

**15.** *Bruton,* 391 U.S. at 126, 128–29, 88 S.Ct. at 1622–24.

**16.** 205 U.S. 86, 27 S.Ct. 456, 51 L.Ed. 722 (1907).

**17.** 614 P.2d 756 (Alaska 1980).

**18.** *Id.,* 614 P.2d at 758 n. 2.

The fact that the supreme court decided the *corpus delicti* issue based on its appellate review of the grand jury record shows that the court was following the "evidentiary foundation" approach to the *corpus delicti* rule.

This court has likewise adhered to the view that the *corpus delicti* is the evidentiary foundation that must be established before the State will be allowed to introduce evidence of a defendant's confession. As we said in *State v. McDonald*, "The usual statement [of the rule] is ... that there must be proof *aliunde* of the *corpus delicti* before an extra-judicial confession may be admitted in evidence." [19] And our past decisions in this area show that we, like the supreme court, view *corpus delicti* as a sufficiency-of-the-evidence question to be decided by a judge, not the jury.

For example, in *Drumbarger v. State* [20], the defendant argued that some of the State's evidence had been inadmissible hearsay, and that the State's case, stripped of this hearsay, was insufficient to establish the *corpus delicti* of some of the charged offenses. [21] But this court held that "the *corpus delicti* requirement would be satisfied even assuming all of the challenged hearsay had been inadmissible." [22] We reached this conclusion by independently examining the State's evidence to see whether it satisfied the *corpus delicti* rule. [23]

Our decision in *Drumbarger* implicitly relies on the proposition that, like sufficiency of the evidence, *corpus delicti* is a question of law for the trial judge and, later, for the reviewing court. We rejected Drumbarger's *corpus delicti* challenge by deciding that, even if all the challenged hearsay evidence was wrongly admitted, the State's evidence would still establish *corpus delicti*. We would not have discussed the *corpus delicti* issue in this manner if we had believed that *corpus delicti* was ultimately a jury question.

■ Normally, when a defendant claims that the government's case rested on inadmissible evidence and the reviewing court agrees, the reviewing court must not only determine whether the State's remaining evidence is sufficient to support the conviction but must also determine whether the inadmissible evidence might have substantially affected the jury's view of the case. [24] But we did not ask this second question in *Drumbarger*. Instead, having concluded that the State's remaining evidence (minus the challenged hearsay) was sufficient to establish the *corpus delicti*, we rejected Drumbarger's *corpus delicti* argument with never a mention of the jury.

Our decision in *McKenzie v. State* [25] reflects the same approach. When assessing the sufficiency of the State's evidence to establish the *corpus delicti*, this court did not mention the jury or discuss how the jurors might have viewed the evidence. Likewise, we did not mention the trial judge's interpretation of the evidence or discuss whether the trial judge might have abused his discretion in ruling that the *corpus delicti* had been established. Rather, we treated *corpus delicti* as an issue of law: we analyzed the State's evidence and independently determined whether it was sufficient to satisfy the rule. [26]

This review of Alaska cases shows that this court and the Alaska Supreme Court have consistently followed the approach established in 1907 by the United States Supreme Court in *Perovich*. Under this "evidentiary foundation" approach to *corpus delicti*, the trial judge assesses the sufficiency of the State's evidence to establish the *corpus delicti*. If the evidence is sufficient, then the State can introduce the defendant's confession. When the case goes to the jury, the

---

**19.** 872 P.2d 627, 653 (Alaska App.1994) (quoting Rollin M. Perkins, *The Corpus Delicti of Murder*, 48 Va.L.Rev. 173, 179 (March 1962)).

**20.** 716 P.2d 6 (Alaska App.1986).

**21.** *See id.* at 12.

**22.** *Id.*

**23.** *See id.*

**24.** *See Love v. State*, 457 P.2d 622, 629–631 (Alaska 1969).

**25.** 776 P.2d 351 (Alaska App.1989).

**26.** *See id.* at 352.

jury is not asked to re-assess the *corpus delicti*. Instead, the jury is simply asked to determine whether the State has proved its case beyond a reasonable doubt. If the defendant is convicted and appeals the *corpus delicti* ruling, the appellate court treats the issue as a question of law, a question to be decided by assessing, *de novo*, the legal sufficiency of the State's evidence to establish the *corpus delicti*.

Despite Alaska's apparent adoption of the "evidentiary foundation" approach to *corpus delicti*, there is no Alaska decision (leaving aside the United States Supreme Court's decision in *Perovich*) squarely holding that *corpus delicti* is not a jury issue. Neither of the parties to the present appeal has briefed this question. And, as we noted before, *Wigmore* lists a number of cases adopting or supporting the view that juries should re-assess *corpus delicti* even after the trial judge determines that the defendant's confession is admissible.

For these reasons, we are hesitant to squarely hold that *corpus delicti* is exclusively an issue for the trial judge, not the jury. But we need not decide this question to resolve Dodds's appeal.

■ As explained above, Dodds did not object to the fact that the jury received no instruction on *corpus delicti*. He must therefore show that the trial judge's failure to instruct the jury on this subject constituted plain error. When a legal matter is subject to reasonable dispute, so that competent judges and attorneys might reasonably disagree concerning the answer, there is no plain error.[27]

On the question of whether a jury needs to be instructed on *corpus delicti*, our prior cases strongly suggest that the jury does not decide this issue and that no *corpus delicti* instruction is necessary. Whatever might be said in favor of a contrary rule, it is clear that competent judges and attorneys could reasonably conclude that there was no error

in failing to instruct the jury regarding *corpus delicti*. This being so, Dodds has failed to show that his trial judge committed plain error when the judge omitted a *corpus delicti* instruction.

■ We also note that when a defendant claims plain error arising from the jury instructions, the defendant must prove that the error led to a miscarriage of justice.[28] Dodds's jury was instructed that the State was obliged to prove every element of the charge beyond a reasonable doubt. In addition, the pattern jury instruction informed the jurors that they were "the exclusive judges" on the issues of whether Dodds in fact made the confession and, if he did, whether "the statement [was] true in whole or in part." Finally, the fact that the robbery occurred was not seriously disputed. Under these circumstances, the lack of a *corpus delicti* instruction did not manifestly prejudice the fairness of Dodds's trial.

*Conclusion*

Dodds argues that the *corpus delicti* rule restricts a jury's consideration of a defendant's confession, and it was therefore plain error for the trial judge not to instruct the jury concerning the *corpus delicti* rule. But we have concluded that, because the occurrence of the robbery was essentially undisputed, Dodds's case raises no real *corpus delicti* issue. Additionally, we have concluded that competent judges and attorneys, familiar with Alaska law on this subject, could reasonably conclude that a jury need not be instructed on *corpus delicti* even when the issue is disputed. For these reasons, we hold that Dodds has failed to demonstrate plain error.

The judgement of the superior court is AFFIRMED.

**27.** *See Marrone v. State,* 653 P.2d 672, 676 (Alaska App.1982).

**28.** *See Estate of McCoy,* 844 P.2d 1131, 1134 (Alaska 1993): "Plain error will be found only when an erroneous instruction creates 'a high likelihood that the jury followed an erroneous theory[,] resulting in a miscarriage of justice.'

*Holiday Inns of America, Inc. v. Peck,* 520 P.2d 87, 91 (Alaska 1974). As this court more recently stated, the ultimate determination in analyzing plain error in jury instructions is simply whether a correct instruction would have likely altered the result. *Conam Alaska v. Bell Lavalin, Inc.,* 842 P.2d 148, 153 (Alaska 1992) (citations omitted)."