**Izaz KHAN, Petitioner,**

v.

**STATE of Alaska, Respondent.**

No. S–13501.

Supreme Court of Alaska.

June 15, 2012.

Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Petitioner.

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions & Appeals, Anchorage, and John J. Burns, Attorney General, Juneau, for Respondent.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Petitioner Izaz Khan was indicted on one count of perjury based on four allegedly false statements made in a financial affidavit. At trial, the court instructed the jury, without objection from Khan, that they did not need to be unanimous regarding which statements were false. The jury convicted Khan.

The court of appeals affirmed, concluding that even assuming the instruction was erroneous, the error would not rise to the level of plain error. The court of appeals reasoned that any error was not prejudicial because Khan had presented a single defense that applied to all four statements.

Khan filed a petition for hearing, which we granted on the following questions: "(1) whether a unanimous jury verdict is a right under the Alaska Constitution, and (2) if so, the appropriate plain error analysis for reviewing the effect of a contrary jury instruction given without any objection by the defendant."

Both parties agree that the right to a unanimous jury verdict is constitutional in nature. We agree that Khan's right to have the jury unanimously agree on what criminal conduct he committed is protected by the Due Process Clause of the Alaska Constitution.

1. 261 P.3d 758 (Alaska 2011).

2. 111 Hawai'i 327, 141 P.3d 974 (2006).

3. 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

The parties disagree about the proper plain error analysis for constitutional errors. But last year, in a case decided after we granted this petition, we clarified our constitutional plain error analysis in *Adams v. State.*[1] Khan now argues that we should depart from *Adams* to adopt the analysis of the Supreme Court of Hawai'i in *State v. Nichols*[2] in analyzing erroneous jury instructions. The State, in turn, argues that we should depart from *Adams* and adopt the federal plain error standard from the United States Supreme Court's decision in *United States v. Olano.*[3] We decline both parties' invitations to reconsider *Adams,* and we reaffirm our decision in that case. *Adams* sets out the correct analysis of the plain error doctrine for an erroneous jury instruction that violates a defendant's constitutional rights. Because the court of appeals did not apply the correct standard for constitutional plain error, we remand this case for a determination whether, if the challenged jury instruction was erroneous, reversal is required under the proper plain error analysis.

## II. FACTS AND PROCEEDINGS

### A. Facts

In October 2004 Petitioner Izaz Khan, a homeless resident of Unalaska, was being held in jail on misdemeanor charges.[4] Khan asked a Department of Corrections employee for the paperwork necessary to obtain court-appointed counsel. Khan filled out the paperwork, including a financial statement, and signed it.

In the financial statement, Khan stated that he had last worked on September 11, 2001, that he had no employers in the preceding 12 months, and that he had received no income in the preceding 12 months. He also left blank a space on the form asking the value of any motor vehicles and listed his total assets as "None."

4. Most facts come from the court of appeals' opinion *Khan v. State,* 204 P.3d 1036, 1038 (Alaska App.2009).

Based on these four statements, which the State alleged were false, the State indicted Khan for one count of perjury, a felony.

### B. Proceedings

At trial, the State presented evidence that Khan's four statements were not true. An employee with the Department of Labor testified that Khan had worked for several employers since 2001, including three in the preceding year, and that he had earned roughly $3,000 in the preceding year. Additionally, Department of Motor Vehicles records showed that Khan owned a truck at the time he signed his affidavit. Khan did not dispute the falsity of his statements, but rather he argued that due to his "anger, fright, agitation, and frustration, he was not paying careful attention to how he filled out the affidavit—and, therefore, he did not make these false statements 'knowingly.' "[5]

The superior court instructed the jury that to find Khan guilty of perjury, it did not have to agree which of the four statements was false.[6] Khan's attorney did not object to this instruction. Khan was convicted, and he appealed.

Among his points on appeal, Khan argued that the superior court erred in giving this jury instruction, maintaining "that it was unlawful for the jury to convict him unless the jurors reached unanimous agreement concerning which statement or statements were knowingly false."[7] The court of appeals said that "[i]n the context of jury instructions,

'[p]lain error exists when [the] jury instruction obviously create[d] a high likelihood that the jury w[ould] follow an erroneous theory resulting in a miscarriage of justice.' "[8] The court of appeals noted that "jurors must 'unanimously agree that the defendant committed the wrongful deed' "[9] and therefore "assume[d]" that the superior court erred in giving the jury instruction.[10] But the court of appeals, relying on *State v. Covington*,[11] concluded that any error was harmless because Khan presented a "blanket defense"— namely that he lacked the requisite mens rea—and so the superior court's error "did not affect the jury's verdict."[12] The court therefore affirmed Khan's conviction.[13]

Khan filed a petition for hearing. We granted the petition with respect to two issues: "(1) whether a unanimous jury verdict is a right under the Alaska Constitution, and (2) if so, the appropriate plain error analysis for reviewing the effect of a contrary jury instruction given without objection by the defendant."

### III. STANDARD OF REVIEW

■ We review questions of constitutional and statutory interpretation de novo, adopting "the rule of law that is the most persuasive in the light of precedent, reason, and policy."[14] Trial errors to which the parties did not object are reviewed for plain error.[15] The proper analysis under this standard is one of the main issues in this case, and we address it in detail below.

---

**5.** *Id.* at 1043.

**6.** The jury instruction read:

> You are instructed that there are alternative theories by which the defendant may be found guilty of this charge. You need not be unanimous regarding which theory the prosecution has proven. It is sufficient that you each agree that the prosecutor has proven at least one of the theories beyond a reasonable doubt. If you are so satisfied, then you shall find the defendant guilty, notwithstanding the fact that you may not have reached complete unanimity as to which theory of guilt applies to the case. This is not required by the law.

**7.** *Khan*, 204 P.3d at 1040.

**8.** *Id.* at 1040–41 (internal quotation marks omitted) (quoting *Aviation Assocs., Ltd. v. TEMSCO*

*Helicopters, Inc.*, 881 P.2d 1127, 1131 n. 7 (Alaska 1994)).

**9.** *Id.* at 1042 (quoting *State v. James*, 698 P.2d 1161, 1165 (Alaska 1985)).

**10.** *Id.* at 1043.

**11.** 711 P.2d 1183 (Alaska App.1985).

**12.** *Khan*, 204 P.3d at 1043.

**13.** *Id.*

**14.** *Turney v. State*, 936 P.2d 533, 538 (Alaska 1997) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

**15.** *See Adams v. State*, 261 P.3d 758, 764 (Alaska 2011) (quoting Alaska R.Crim. P. 47(b)).

## IV. DISCUSSION

### A. Jury Unanimity Is Required By The Alaska Constitution.

■ Khan argues that the right to a unanimous jury verdict is protected by various provisions of the Alaska Constitution. The State, "without conceding the existence of an error" in the superior court's instruction, "acknowledges that an alleged violation of jury unanimity would implicate" constitutional rights.

As the State suggests in its brief, jury unanimity describes two things. First it means literally that all jurors must agree to return a guilty verdict. Article 1, section 11 of the Alaska Constitution guarantees that all criminal defendants "shall have the right to a speedy and public trial, by an impartial jury of twelve...." The United States Supreme Court has held that a similar requirement in the Sixth Amendment of the United States Constitution[16] requires that jury verdicts be unanimous.[17] Khan argues that Alaska's right to trial by jury similarly requires a unanimous verdict in his case. As the State suggests in its brief, though, the issue here is not simply the requirement of numerical unanimity. Here the jury returned its verdict 12–0.

■ Thus, as the State points out, there is a second concept embodied in the notion of jury unanimity. This concept, sometimes called "factual concurrence,"[18] refers to the specificity with which jurors must agree on the nature of the illegal act committed by the defendant. The United States Supreme Court addressed this concept in *Schad v. Arizona*,[19] a case involving an Arizona man convicted under a first-degree murder statute that defined the crime alternatively as "murder which is ... wilful, deliberate or premeditated ... or which is committed ... in the perpetration of, or attempt to perpetrate, ... robbery."[20] The constitutional problem, from the defendant's point of view, was that the prosecutor advanced two theories—premeditated murder and felony murder—and the jury was not required to choose under which of these two theories it was convicting the defendant.[21] This, claimed the defendant, violated the requirement of unanimity in jury verdicts in state capital cases.[22]

The Supreme Court rejected Schad's proposed analysis based on the Sixth Amendment right to a jury, noting that the question was not whether a unanimous jury had found that the state had met its burden of proof, but rather what the state had to prove.[23] Because the first-degree murder statute had

16. U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury....").

17. *See Andres v. United States*, 333 U.S. 740, 748–49, 68 S.Ct. 880, 92 L.Ed. 1055 (1948). The Supreme Court subsequently held that this right was not incorporated against the states. *See Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972) (upholding a state law allowing a guilty verdict by a vote of 10–2 against a Sixth Amendment challenge); *Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) (upholding a state law allowing a guilty verdict by a vote of 9–3 against a due process challenge); *see also McDonald v. City of Chicago*, —— U.S. ——, 130 S.Ct. 3020, 3035 & n. 14, 177 L.Ed.2d 894 (2010) (noting that the Sixth Amendment requirement of unanimity was "one exception to th[e] general rule" that "incorporated Bill of Rights protections 'are all to be enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment[,]' " an exception caused by "an unusual division among the Justices, not an endorsement of the two-track approach to incorporation" (quoting *Malloy v. Hogan*, 378 U.S. 1, 10, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964))).

18. *See, e.g.,* Scott W. Howe, *Jury Fact–Finding in Criminal Cases: Constitutional Limits on Factual Disagreements Among Convicting Jurors*, 58 Mo. L. REV. 1, 6 (1993).

19. 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991).

20. *Id.* at 628, 111 S.Ct. 2491 (quoting ARIZ REV. STAT. ANN. § 13–452 (Supp.1973)).

21. *Id.* at 628–30, 111 S.Ct. 2491.

22. *Id.* at 630, 111 S.Ct. 2491. Because the Supreme Court has held that the right to a unanimous jury verdict is not incorporated against the states, *see supra* note 14, Schad had to rely on the fact that this was a capital case and thus implicated the Eighth Amendment as well.

23. *Id.*

multiple possible ways for a jury to find that Schad had met the mens rea requirement, the question was "whether it was constitutionally acceptable to permit the jurors to reach one verdict based on any combination of the alternative findings" of Schad's state of mind.[24] This, said the Court, did not then implicate the Sixth Amendment right to trial by jury, but rather implicated due process concerns regarding "the permissible limits in defining criminal conduct, as reflected in the instructions to jurors applying the definitions."[25]

■ The Court started its due process analysis by noting that a jury need not agree "as to mere means of satisfying the *actus reus* element of an offense" and so there was no reason to categorically prohibit jurors from finding mens rea elements satisfied by alternative means.[26] Nonetheless, said the Court, due process does limit a state's capacity to "define different courses of conduct, or states of mind, as merely alternative means of committing a single offense," chiefly through "[t]he axiomatic requirement of due process that a statute may not forbid conduct in terms so vague that people of common intelligence would be relegated to differing guesses about its meaning."[27] This meant that "no person may be punished criminally save upon proof of some specific illegal conduct."[28] Thus, while a state could permit a jury to reach a verdict based on alternative

methods of committing the crime or achieving a mental state, the jurors at least had to unanimously agree what "mischief" the defendant had committed.[29]

■ We faced a similar issue in *State v. James*.[30] There the question was whether a defendant could be convicted under disjunctive theories of first-degree assault.[31] While holding that juries need not agree on a particular statutory theory, we noted "that the purpose of the unanimous jury requirement is well served by our insistence that jurors agree upon just what the defendant did; they must all agree that the defendant committed a single offense."[32] Although we enunciated a unanimity requirement, we did not explicitly outline the source of this requirement.[33] We reached this conclusion through an analysis of the Fifth Circuit's decision in *United States v. Gipson*.[34] In *Gipson*, the Fifth Circuit relied on the Sixth Amendment for the proposition that "a federal criminal defendant has a constitutionally based right to a unanimous jury verdict," which was implicated when asking what the state had to prove to satisfy the elements of a crime.[35] *Gipson*'s reliance on the Sixth Amendment, however, was expressly disapproved by the United States Supreme Court in *Schad v. Arizona*.[36] In *Schad*, the Supreme Court said that cases dealing with what the state had to prove to convict were analyzed under

24. *Id.*

25. *Id.* at 631, 111 S.Ct. 2491. In a footnote, the Court noted that its differentiation between a Sixth Amendment and a due process approach was significant "chiefly[ ] because a state criminal defendant, at least in noncapital cases, has no federal right to a unanimous jury verdict." *Id.* at 635 n. 5, 111 S.Ct. 2491.

26. *Id.* at 632, 111 S.Ct. 2491.

27. *Id.*

28. *Id.* at 633, 111 S.Ct. 2491.

29. *See* Guido Calabresi, *Being Honest About Being Honest Agents*, 33 Harv. J.L. & Pub Pol'y 907, 911 (2010) (referring to "the 'mischief' ... to which [a criminal] statute was addressed").

30. 698 P.2d 1161 (Alaska 1985); *see also Ward v. State*, 758 P.2d 87 (Alaska 1988).

31. *Id.* at 1163.

32. *Id.* at 1167.

33. Alaska Rule of Criminal Procedure 31(a) requires that "verdict[s] shall be unanimous." The only question here is whether this rule has a constitutional dimension.

34. *James*, 698 P.2d at 1166 (discussing *United States v. Gipson*, 553 F.2d 453 (5th Cir.1977)).

35. 553 F.2d at 456.

36. *Schad v. Arizona*, 501 U.S. 624, 635 n. 5, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) ("The [*Gipson*] court identified this right as a concomitant of the federal criminal defendant's Sixth Amendment right to a unanimous verdict, and subsequent courts following *Gipson* have adopted that characterization.... [W]e think the right is more accurately characterized as a due process right than as one under the Sixth Amendment.").

due process.[37] Thus the issue presented here is one of due process.

■■■■ The requirement that all jurors agree on the criminal conduct committed by the defendant is rooted also in the interaction of the right to a trial by jury and the due process guarantee that no one shall be found guilty except on a finding of guilt beyond a reasonable doubt. In *United States v. Correa–Ventura*, the Fifth Circuit examined the purpose of unanimous jury verdicts and noted that "[t]he unanimity rule is a corollary to the reasonable-doubt standard, both conceived as a means of guaranteeing that each of the jurors 'reach [ ] a subjective state of certitude' with respect to a criminal defendant's culpability before rendering a conviction."[38] As the United States Supreme Court explained in *Sullivan v. Louisiana*, a case dealing with an erroneous reasonable doubt instruction:

> It is self-evident ... that the Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict are interrelated. It would not satisfy the Sixth Amendment to have a jury determine that the defendant is *probably* guilty, and then leave it up to the judge to determine (as [*In re*] *Winship* requires) whether he is guilty beyond a reasonable doubt. In other words, the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt.[39]

If the jury is not required to agree on what criminal conduct a defendant has committed, there can be no guarantee that the jury has agreed that the defendant committed a crime beyond a reasonable doubt. In the case where the state is alleging alternative crimes, as opposed to alternative theories of a single crime, jurors who unanimously agree that some crime has been committed may none-theless disagree as to which crime and may harbor reasonable doubts as to the alternatives. Accordingly, we conclude that a criminal defendant's right to have jurors "all agree that the defendant committed a single offense"[40] is protected by the Alaska Constitution's due process clause.[41]

Although we conclude that any error in the jury instruction was constitutional in nature, we do not address the question whether the challenged jury instruction in this case was erroneous. The court of appeals "assume[d] that Khan's jury should have been instructed that they had to reach a unanimous decision regarding each of the four false statements alleged by the State," and went on to conclude that even were this error, it was harmless.[42] In this case, we granted a hearing on only two questions: "(1) whether a unanimous jury verdict is a right under the Alaska Constitution, and (2) if so, the appropriate plain error analysis for reviewing the effect of a contrary jury instruction given without any objection by the defendant." We did not ask for briefing on the question whether the jury instruction in this case was erroneous, and we therefore remand this case to the court of appeals for a decision on whether the challenged jury instruction was erroneous and, if so, whether reversal is required under the proper analysis for constitutional plain error.

**B. The Appropriate Plain Error Analysis**

■■■■ Because of various issues concerning Khan's representation that required remand for several hearings, a significant amount of time has elapsed since we granted this petition. In that time, we decided *Adams v. State*, which clarified and affirmed the constitutional plain error standard that

---

**37.** *Id.*

**38.** 6 F.3d 1070, 1076–77 (5th Cir.1993) (omission in original) (quoting *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)).

**39.** *Sullivan v. Louisiana*, 508 U.S. 275, 278, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (emphasis in original) (citations omitted).

**40.** *State v. James*, 698 P.2d 1161, 1167 (Alaska 1985).

**41.** Article 1, section 7 of the Alaska Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law."

**42.** *Khan v. State*, 204 P.3d 1036, 1043 (Alaska App.2009).

we had employed for nearly 40 years.[43]  In *Adams*, we held that "in order for a court to find plain error, (1) the error must not be the result of an intelligent waiver or a strategic decision not to object; (2) the error must affect substantial rights; (3) the error must be obvious; and (4) the error must be prejudicial."[44]  We further concluded that "[a] constitutional violation will always affect substantial rights and will be prejudicial unless *the State* proves that it was harmless beyond a reasonable doubt.  An error that is not constitutional in nature will be prejudicial if *the defendant* proves that there is a reasonable probability that it affected the outcome of the proceeding."[45]  In other words, since granting this petition, we have effectively answered the second question we asked about the appropriate plain error standard for this case.

Nonetheless, both Khan and the State urge us to jettison our recently reaffirmed precedent.  Khan argues that because it is the "trial court's duty to properly instruct a jury" and because constitutional errors are especially significant, "it is inappropriate to review challenges to ... jury instructions [relating to unanimity] differently depending on whether a timely objection was made."  Khan would therefore have us adopt the Supreme Court of Hawai'i's conclusion in *State v. Nichols*.[46]  In *Nichols*, the court held that "in the case of erroneous jury instructions, th[e plain error] standard of review is effectively merged with the ... harmless error standard of review because it is the duty of the trial court to properly instruct the jury."[47]

The State, on the other hand, argues that we ought to overturn *Adams*, adopting instead the federal plain error analysis from *United States v. Olano*.[48]  In that case, concerning an alternate juror who was improperly allowed to deliberate in violation of a federal rule of criminal procedure, the United States Supreme Court adopted a three-prong test for plain error: (1) there must be an error; (2) that error must have been obvious; and (3) the error must "affec[t] substantial rights."[49]  As to this third prong, the Court said that "in most cases it means that the error must have been prejudicial."[50]  Significantly, though, even for constitutional plain error, "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice."[51]  We address these two standards in turn.

Khan argues that we should adopt the plain error standard of review used by the Supreme Court of Hawai'i in *Nichols*.  He argues that because the trial court is charged with instructing the jury, it should not matter whether a defendant has objected.  An error in an instruction renders a jury verdict "suspect," Khan argues, and such a verdict must be subject to harmless error analysis regardless of whether the defendant objected to it.  Khan argues that this proposed rule is consistent with our decisions on the role of the court in instructing the jury.  But nothing in *Adams* or its predecessors suggests that the plain error standard might change for jury instructions.  We decline Khan's invitation to carve out an exception to the plain error rule for jury instructions.

Although we agree with Khan that the trial court bears the primary responsibility for instructing the jury,[52] Khan's proposed rule

---

**43.**  261 P.3d 758 (Alaska 2011).

**44.**  *Id.* at 771 (numbering added).

**45.**  *Id.* at 773 (emphasis added).

**46.**  111 Hawai'i 327, 141 P.3d 974 (2006).  Khan submitted his opening brief a few weeks before we decided *Adams*, and he therefore did not have an opportunity to consider that case.  Whether Khan would have argued differently had he the benefit of *Adams*, he nonetheless reaffirmed his commitment to the *Nichols* standard in his reply brief and at oral argument.

**47.**  *Id.* at 984.

**48.**  507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

**49.**  *Id.* at 733–34, 113 S.Ct. 1770 (quoting Fᴇᴅ. R.Cʀɪᴍ.P. 52(b)).  Like Federal Rule 52(b), Alaska Criminal Rule 47(b) refers to plain errors as those "affecting substantial rights."

**50.**  *Id.* at 734, 113 S.Ct. 1770.

**51.**  *Id.*

**52.**  *See* Alaska R.Crim. P. 30(b) ("The court shall instruct the jury on all matters of law which it considers necessary for the jury's information in giving their verdict.").

ignores the role of counsel in aiding the trial court. Under Khan's proposed rule, a defendant who tactically chooses not to object to an erroneous jury instruction would be given the option of a second trial if convicted. The *Adams* rule, by including an inquiry into whether the defendant's non-objection was tactical, better respects the trial process and the role of counsel. We therefore decline to adopt the *Nichols* standard for review of erroneous jury instructions to which no objection has been lodged.

Because the State is asking us to overturn a prior decision, it must meet the burden of overcoming stare decisis. We have said that "we will overrule a prior decision only when 'clearly convinced that the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent.' "[53]

The State suggests that because *Adams* was decided in reliance on *Burford v. State*,[54] it is appropriate for us to reexamine the correctness of *Burford*. As Khan points out, though, we granted the State's request to file supplemental briefing in *Adams* on the appropriate standard for plain error review, and the State argued in its supplemental briefing, as it does here, that we should adopt the federal standard from *Olano*. We expressly rejected that argument.[55] Therefore, in order for the State now to prevail on its argument that we should adopt the federal plain error rule, the State must show as a threshold matter that *Adams* was either originally erroneous or has since been left behind.

The State argues that *Adams* was erroneous when adopted.[56] We have said that a

decision is "originally erroneous" if (1) it "proves to be unworkable in practice" or (2) we failed to address relevant points and the party can show that it "would *clearly* have prevailed if the points had been fully considered."[57]

The State argues that, although we have rejected the *Olano* standard, we have never conducted an "independent analysis" that "addresses which rule is better." The State argues that if we had "independently analyzed the issue, [we] would have reached a different result" based on policy reasons.

But we did consider the *Olano* rule and we rejected it, recognizing that "unlike the *Olano* court, we have interpreted 'affect substantial rights' not to mean that the error was prejudicial, but instead to mean that the error pertains to an important right that could affect the fundamental fairness of the proceeding."[58] We further noted that "[w]e have required a showing of prejudice as a separate factor. And ... when the error is a constitutional violation, it will always affect substantial rights and will be prejudicial unless it was harmless beyond a reasonable doubt."[59] In its briefing in *Adams*, the State argued several policy reasons for adopting *Olano*, but we found them unpersuasive. The State is thus incorrect in its suggestion that we "failed to meaningfully address relevant points" in our *Adams* decision. We therefore decline the State's invitation to reconsider that decision.

Because the analysis used by the court of appeals was inconsistent with *Adams* and placed the burden of showing prejudice of a constitutional error on the defendant rather than the State,[60] we remand this case for a new plain error analysis.

**53.** *Pratt & Whitney Canada, Inc. v. Sheehan*, 852 P.2d 1173, 1176 (Alaska 1993) (quoting *State v. Dunlop*, 721 P.2d 604, 610 (Alaska 1986)).

**54.** 515 P.2d 382 (Alaska 1973).

**55.** *Adams v. State*, 261 P.3d 758, 772 n. 71 (Alaska 2011).

**56.** The State also argues that *Burford* is no longer sound due to changed circumstances, but as discussed above, it is *Adams*, not *Burford*, that the State is seeking to overturn. The State makes no argument that circumstances have

changed since *Adams* was decided, just nine months ago.

**57.** *Thomas v. Anchorage Equal Rights Comm'n*, 102 P.3d 937, 943 (Alaska 2004) (emphasis in original) (quoting *Pratt & Whitney*, 852 P.2d at 1176).

**58.** *Adams*, 261 P.3d at 772 n. 72.

**59.** *Id.*

**60.** *Khan v. State*, 204 P.3d 1036, 1043 (Alaska App.2009).

## V. CONCLUSION

We REMAND this case to the court of appeals to determine whether, if there was error in the jury instruction, the error was prejudicial under the proper plain error analysis outlined in *Adams v. State*.