Steven A. **MICHAEL**, Petitioner,

v.

**STATE of Alaska**, Respondent.

No. S–3155.

Supreme Court of Alaska.

Feb. 8, 1991.

---

Michael Jungreis, Taylor, Jungreis & Hanlon, Anchorage, for petitioner.

Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecution & Appeal, Anchorage, Douglas B. Baily, Atty. Gen., Juneau, for respondent.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

In this case, a petitioner claims to have been convicted in the superior court of crimes not charged in his indictment. The court of appeals ruled otherwise and affirmed petitioner's conviction. *Michael v. State*, 767 P.2d 193 (Alaska App.1988). We reverse.

### I

Steven and Loreli Michael were charged by an Anchorage grand jury with thirteen counts of assault in the first degree.[1] Each count of their joint indictment alleged that the defendants,

> either personally or as a person ... legally accountable for the conduct of another, did unlawfully and intentionally [i.e., knowingly][2] perform an act that resulted in serious physical injury to [the Michaels' infant daughter] under circumstances manifesting extreme indifference to the value of human life, by fracturing [one of the child's bones].[3]

The superior court, after a bench trial,[4] found Loreli Michael guilty as charged on three counts of the indictment.[5] Because the evidence failed to persuade the court that Steven Michael had personally inflicted any of the victim's injuries, or that he had acted as his wife's accomplice, he was acquitted of assault in the first degree. The court, however, declared Michael guilty of two counts of second degree assault, a lesser crime.[6] Michael was convicted on the theory that he had breached his duty as a parent to protect his child, after becoming aware of the threat of physical abuse by the child's mother.[7]

1. AS 11.41.200.

2. Brackets in the original.

3. Each count in the thirteen count indictment named a bone found broken in the body of the alleged victim.

4. Both defendants waived their right to a jury trial.

5. The court found that Loreli Michael inflicted the injuries suffered by her daughter. Accordingly, Loreli was convicted of assault in the first degree.

6. AS 11.41.210(a)(2).

7. The trial court found that "[Steven] Michael had a legal duty to aid and assist his daughter if she was under the threat or risk of physical damage or assault ... [and] that as a result of his failure to act, that his daughter suffered serious physical injury."

Michael appealed his conviction on several grounds. Among other things, he claimed to be the victim of a fatal variance, arguing that he was convicted of a crime different than those alleged in his indictment. The court of appeals affirmed Michael's conviction for the lesser crime, calling second degree assault a "lesser included offense." *Michael*, 767 P.2d at 196.

The court of appeals acknowledged that "conviction for an offense different than the one charged is a fatal variance, and requires reversal." *Id.* at 201. The court, however, "fail[ed] to see any merit to Michael's argument," because the district attorney who sought his indictment "told the grand jury that parents have a legal obligation to protect their children and that a parent could be guilty of assault for failing to protect a child." *Id.* at 202. Since this theory was presented to the grand jury, and Michael had notice prior to trial that the state intended to rely upon it, the court of appeals held that his conviction was proper.[8]

We granted Michael's petition for hearing to examine more closely his claim of fatal variance.[9]

## II

It has been said that one claiming a fatal variance states, in effect: "The state may have offered evidence sufficient to establish a crime, but it is not the crime alleged in its accusatory pleading and I therefore am entitled to an acquittal." 2 W. LaFave & J. Israel, *Criminal Procedure* § 19.2(h) at 466–67 (1984). In most states, however, a variance requires reversal of a defendant's conviction only when it deprives the defendant of fair notice of the charges

against him, or leaves the defendant open to the risk of double jeopardy. *Id.* at 468. According to this standard, Steven Michael's conviction and the decision to affirm it were arguably correct. We believe, however, that it is the *wrong* standard for Alaska.

■ Inductment by a grand jury is not required in a majority of states. 2 W. LaFave & J. Israel, *supra*, § 15.1(b) at 279. In Alaska, however, in felony prosecutions, the rule is otherwise. Under the Alaska Constitution, "No person shall be held to answer for a ... crime [punishable by imprisonment for more than one year, *i.e.*, a felony], unless on a presentment or indictment of a grand jury...." Alaska Const. art. I, § 8; *accord* Rule 7(a), Alaska R.Crim.P.

■ This provision in the Alaska Constitution is identical to one found in the Fifth Amendment to the Constitution of the United States. *Compare* Alaska Const. art. I, § 8 *with* U.S. Const. amend. V. For this reason, we believe it is appropriate when dealing with variances to draw the distinction which has been drawn by the United States Supreme Court "between a departure in the proof from the indictment sufficiently great to be regarded as a constructive amendment, which is regarded as a reversible error in itself, and a mere variance, which is reversible error only if prejudicial to the defendant." 2 W. LaFave & J. Israel, *supra*, § 19.2(h) at 469–70 (quoting C. Wright, *Federal Practice and Procedure—Criminal*, § 127 at 418–19 (2d ed. 1982)); *see Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960);[10] *Ex Parte Bain*, 121 U.S. 1, 7

---

**8.** Michael's claim that the connection between his indictment and conviction was not sufficiently clear to allow him to assert double jeopardy, if ever again charged with the same offense, was also held to have "no merit." *Michael*, 767 P.2d at 202.

**9.** Rule 302(a), Alaska R.App.P.

**10.** In *Stirone*, the grand jury indictment charged that the defendant had interfered with interstate commerce by extortion in connection with shipments of sand into Pennsylvania, and the defendant was tried on that charge. *Stirone*, 361 U.S.

at 213–14, 80 S.Ct. at 271–72. The trial judge, however, also admitted evidence tending to prove defendant had further interfered with shipments of steel out of Pennsylvania. *Id.* at 214, 80 S.Ct. at 271–72. The judge then instructed the jury that defendant's guilt in the case could rest on a finding of his interference in connection with either the sand or the steel. *Id.* The Supreme Court held that the trial judge effectively had permitted amendment of the indictment to include a theory of liability not charged by the grand jury. *Id.* at 217, 80 S.Ct. at 273. This constructive amendment violated

S.Ct. 781, 30 L.Ed. 849 (1886); *United States v. Pazsint,* 703 F.2d 420, 423 (9th Cir.1983). This important distinction is clearly reflected in our prior cases, where we have held that an accused is entitled, under Alaska law, to a decision *by a grand jury* that there is probable cause to hold him for trial. *E.g., Adams v. State,* 598 P.2d 503, 510 (Alaska 1979); *Doe v. State,* 487 P.2d 47, 54 (Alaska 1971).[11]

### III

 In the case at bar, there can be no doubt that there was a variance in fact: Steven Michael was convicted of crimes different than those charged in his indictment. The only question is whether the variance was significant enough to be fatal, according to the proper standard. We conclude that it was.

Had the grand jury chosen to do so, it certainly could have indicted Steven Michael for second degree assault, for failing to protect his child. Michael's failure to carry out his parental duty was clear from the evidence. Moreover, the district attorney handling the case called such evidence to the grand jury's attention and told the grand jury that one in Michael's position could be guilty of assault for failing to protect his child. The fact remains, however, that the grand jury made no such charge in the indictment.[12] As a result, we believe Michael's conviction represents "a departure ... from the indictment sufficiently great to be regarded as a construc-

tive amendment." C. Wright, *Federal Practice and Procedure—Criminal,* § 127, at 418–19 (2d ed. 1982). This constructive amendment clearly prejudiced Michael's substantial right to be tried only on the charges presented by the grand jury. *Accord Stirone,* 361 U.S. at 217, 80 S.Ct. at 273; C. Wright, *supra,* § 516, at 26–27.

Because he was convicted for a crime never charged by the grand jury that indicted him, Steven Michael's conviction is the result of a fatal variance. His conviction, therefore, is REVERSED. The case is REMANDED to the superior court for entry of a JUDGMENT OF ACQUITTAL.[13]

the defendant's substantial right to be tried only on charges presented in a grand jury indictment and, thus, constituted "fatal error." *Id.* at 217–19, 80 S.Ct. at 273–74. Significantly enough, the Supreme Court found the error, or "variance," in *Stirone* fatal because the trial jury's conviction might have rested on the charge impermissibly added by constructive amendment. *Id.* at 219, 80 S.Ct. at 274.

11. In *Adams v. State,* we reversed the defendant's conviction for mayhem upon the ground that his indictment for that offense was invalid. Relevant to our discussion in the case at bar is the reason for our refusal in *Adams* to affirm the conviction, despite the fact that there was sufficient evidence at trial to support it: "If we were to find that a trial could validate an otherwise invalid indictment, the right to indictment by a grand jury would become a nullity and the

grand jury would cease to operate as a check upon the district attorney's power to initiate prosecution." *Adams,* 598 P.2d at 510 (footnote omitted).

12. The state argues strenuously that the charge in the indictment, *i.e.,* that Steven Michael "perform[ed] an act that resulted in serious physical injury to [his child]," included Michael's failure to protect the child. With due respect, we think it obvious that the "acts" alleged in the indictment are *entirely* different in kind from the conduct resulting in Michael's conviction for second degree assault.

13. The result in this case illustrates the continuing importance of careful pleading under Alaska's criminal law. Although today's requirements are far less technical than at common law, they may not be ignored.